## BENNETT v. DANVILLE.

*Timber—Tenant for life.*

On the petition of the tenant for life of real estate, it was referred to a master to inquire and report whether it would be for the benefit of the estate that any part of the wood and timber should be cut.

FROM ROCKINGHAM CIRCUIT COURT.

The petitioner in this case represented that he was in possession as tenant for life of certain real estate, with the right to expend the income as he should deem proper; that at his decease the said real and personal estate was, by the will under which he claimed, to descend to and be equally divided between his children, if he should have any; and in case he should die childless, then said real estate was to be held by the town of Danville for certain purposes in said will specified.

It was further represented that certain portions of this real estate were covered with a heavy growth of wood and timber of many years' standing, and which had attained its growth; that nothing would be added to its growth or value by its longer standing; that the same ought to be cut off, and converted into wood and lumber, and sold, both upon the principles of good husbandry, and that the petitioner might derive some income from the land, and from the sale of the wood and timber.

Wherefore the petitioner prayed that some person might be authorized to cut the said wood and timber, and sell and convert the same

into money, and that the proceeds might be decreed to him for his own use, or invested and disposed of in such other manner and for the benefit of such other persons as might by law be entitled to the same. To this petition there was a general demurrer, and the questions were transferred to this court.

*Morrison & Hiland* and *Hatch*, for the petitioner.

*Marston* and *Locke*, for Quimby.

*Stickney*, for Danville.

*CUSHING, C. J. From the cases of *Delapole* v. *Delapole*, 17 Ves. 150, *Bewick* v. *Whitfield*, 3 P. Wms. 267, *Tooker* v. *Annesley*, 5 Sim. 235, *Hussey* v. *Hussey*, 5 Madd. 44, cited in *Tooker* v. *Annesley*, and *Waldo* v. *Waldo*, 7 Sim. 261, I infer that it is an ordinary exercise of the powers of a court of chancery to order timber trees to be cut. The vice-chancellor, Sir LAUNCELOT SHADWELL, in *Tooker* v. *Annesley*, said,—" I apprehend that the principle upon which the court acts in directing timber to be cut, in cases like the present, is not the personal benefit of the parties, but the benefit of the estate itself—the inheritance."

In this country, where it so often occurs that it is necessary to cut off the wood and timber in order to make the land fit for cultivation, it may be that the inquiry before the master would take a somewhat wider range than in the English practice. In *Chase* v. *Hazelton*, 7 N. H. 171, it was held that clearing land, which the jury finds to be bad husbandry, is waste; from which I infer that by the law of New Hampshire the clearing of land may be necessary as a part of good husbandry, and for the benefit of the inheritance.

The matter should be referred to a master to report whether any of the trees, either from their situation in regard to other trees, or from their being decayed, ought, for the benefit of the estate, to be cut. I think, also, that it would be within the spirit of the cases to extend the inquiry in this country to the point, whether, for the sake of fitting the land for cultivation, the benefit of the estate requires it to be cut.

If it should turn out that, on the report of the master, there should be an order by which any of the land should be cleared or any of the timber sold, it will then be time enough to consider what shall be done with the money obtained from the sale.

LADD, J., and FOSTER, C. J., C. C., concurred.

*Master appointed.*

---

\* SMITH, J., having been of counsel, did not sit.